14508

GARVIN v. SOVEREIGN CAMP, W. O. W.

(192 S. E., 267)

June, 1935.

*Messrs. Williams & Busbee,* for appellant, cite:

*Messrs. Hendersons & Salley,* for respondent, cite:

July 2, 1937.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This suit by F. O. Garvin, as plaintiff, against the defendant, Sovereign Camp of the Woodmen of the World, is an action commenced in the Court of Common Pleas for Aiken County, this State, July 1, 1934, for the purpose of recovering damages, actual and punitive, in the sum of $3,000.00, for the "alleged wrongful and fraudulent breach and cancellation of a contract of insurance," set forth in the complaint. The first move on the part of the defendant was to make a motion to strike from the complaint all allegations applicable to the recovery of punitive damages and a notice to that effect was duly served. The motion was heard and

considered by his Honor, Judge Hayne F. Rice, and an order refusing the motion was passed by his Honor, dated July 6, 1935. From this order of refusal the defendant duly appealed to this Court.

In defendant's amended answer in the cause the material allegations of the complaint were denied and, in this connection, the defendant alleged that the plaintiff's "contract of insurance was lapsed under its own terms, and he was automatically suspended as a member of the order for failure to pay his installments of assessments for the months of July and August, 1933, before the last day of the month in which they were due, and by his failure to pay the current monthly installment of assessment for September, 1933, and because plaintiff was not at that time in good health, and other things which are set out in the amended answer herein."

Issues being joined, the case was tried before his Honor, Judge Hayne F. Rice, and a jury, at the June, 1935, term of said Court, and resulted in a verdict for the plaintiff in the sum of $1,000.00 actual damages and $1,200.00 punitive damages. Defendant's motion for a new trial being refused, from the judgment duly entered on the verdict, the defendant, pursuant to due notice, has appealed to this Court, imputing error to the trial Judge under twelve exceptions. In appellant's brief prepared for this Court the appellant states that there are seven questions for the consideration of the Court, to wit:

"1. Did the Court err in refusing defendant's motion to strike from the complaint the allegations therein as to punitive damages? (Exception 1.)

"2. Did the trial Judge err in refusing defendant's motion for a directed verdict? (Exceptions 2 and 3.)

"3. Did the trial Judge err in admitting in evidence, over defendant's objection, plaintiff's exhibit No. 9? (Exception 3-b.)

"4. Did the trial Judge err in construing section 65 of the Constitution and by-laws of defendant, and in his charge to the jury with reference thereto? (Exception 4.)

"5. Did the trial Judge err in his refusal to charge defendant's second request to charge, and in his comments with reference thereto? (Exception 5.)

"6. Did the trial Judge err in refusing to charge defendant's request to charge upon the law of estoppel? (Exception 6.)

"7. Did the trial Judge err in refusing defendant's motion to set the verdict of the jury aside and grant a new trial? (Exceptions 7 to 12, inclusive.)"

Before undertaking to answer, in detail, the several questions presented by the appellant for our consideration, we shall refer to the case as a whole.

It is, in effect, admitted that the plaintiff, F. O. Garvin, joined the Sovereign Camp of the Woodmen of the World at Williston, S. C., in November, 1910. Some time after that date his membership was transferred to what is known as the Windsor Camp, located in the county of Aiken, S. C. Later, when the Lodge at Windsor was disbanded his membership was transferred to "No. 555 Loyal Camp at Omaha, Nebraska," the head office and principal place of the Woodmen of the World. This transfer, it appears, was made in January, 1933. It further appears that Mr. Garvin took out a "beneficiary certificate" November, 1910, in the Sovereign Camp of the Woodmen of the World, and that it is practically admitted that the said beneficiary certificate amounted to a policy of insurance on Mr. Garvin's life in the sum of $1,000.00. According to the testimony of Mr. Garvin, he paid the assessments upon the said certificate of insurance regularly until July, 1933, and August, 1933, and that the payments for these two months he did not pay until September 7, 1933, and at that time he sent to the head office at Omaha, Neb., a post office money order for the amount of $5.54 to cover the payments due for those two months. Mr.

Garvin also testified, in effect, that that amount was in accordance with his usual custom of paying dues. He further testified that on September 19th of that year the defendant returned to him the post office money order, together with a letter stating that plaintiff's said certificate or policy of insurance was suspended for nonpayment of his July and August installments, and stated that it would be necessary for him, the plaintiff, to undergo a medical examination by the defendant's physician before the said certificate would be reinstated. It appears further from the record that, in accordance with the regulations of the company, Mr. Garvin had elected to make payments monthly. While it is clear from the testimony of the plaintiff that he had been making the payments regularly, he testified that sometimes it was not paid within the month it was due. In the course of his testimony, he stated positively that no question had ever been raised because it was not paid on time, and testified that by his previous course of dealing and custom as to making payment of dues and assessments he had not been required to pay such dues and assessments promptly, and that he was led to believe, and testified that he did believe, that such requirement would not be enforced. In this connection we call attention to the following portion of his Honor's charge to the jury, to which no objection was made by counsel representing the respective parties: "and that in addition thereto he claims that under Sections sixty-five (65) to sixty-eight (68), which were in force, that a member could be in arrears within three months, and that his policy of insurance, or certificate, or membership in the defendant order would be reinstated, and he says he was allowed such period of grace and could pay the moneys which were due within three months after the policy was suspended—that he had three months within which to pay it. And he claims that he was in good standing when the defendant required him to undergo a medical examination, which he refused to do, and thereafter his certificate of insurance became null and void."

It is not the contention of the plaintiff that his certificate of insurance became null and void by operation of law and as a matter of right but by the action of the defendant in wrongfully cancelling the said certificate of insurance and wrongfully declaring it to be null and void against the rights of the plaintiff, and, in accordance with his allegations, the plaintiff introduced testimony tending to establish his position. It is the further contention of the plaintiff that the defendant committed an act of fraud in requiring the plaintiff to undergo a medical examination at the hands of its physician, and, in this manner, in effect, willfully and wantonly committed an act of fraud against the plaintiff; that it was the purpose of the defendant to destroy the said certificate of insurance, knowing that because the plaintiff was getting ripe in years he would not be able to undergo the examination required of him at the hands of defendant and defendant's agent, and that he could not, therefore, be reinstated; that the defendant did this notwithstanding the fact that the defendant knew it would be very difficult to get insurance with any other association or company under the existing conditions. It is contended by the plaintiff that it was the defendant's intention, acting through its head office, to destroy the plaintiff's said certificate of insurance. These contentions of the plaintiff were not only, in effect, alleged, but testimony was introduced from which such inference could reasonably be drawn, and, for that purpose, it was proper for the trial Judge to submit the same to the jury, certainly so far as actual damages was concerned. For the several reasons set forth, the plaintiff asked not only for actual damages, but also for punitive damages.

It is the contention of the defendant, in accordance with its allegations, that at the time mentioned in said answer the plaintiff asked for blanks which he could fill out so as to obtain admission in the association's tuberculosis hospital at San Antonio, Tex., and it is the further contention of the defendant that defendant was informed by the plaintiff that,

according to his physician, he was ill with tuberculosis, and that the association sent to the plaintiff the said blanks, but the plaintiff did not fill them out and return them to the association's head office; that defendant heard nothing further from the plaintiff with reference to said blanks and information desired thereon. It seems to be admitted by defendant that the plaintiff paid his assessments up to and through June, 1933, but it is contended on the part of the defendant that plaintiff failed to pay for the month of July or before the end of the month as required by the constitution and by-laws of the defendant, and it is the contention of the defendant that the plaintiff "automatically became suspended on the first day of August, 1933." It is the contention of the defendant that the plaintiff did not pay the July assessment within the month of July and that "therefore, on the first day of August he was automatically suspended, and his said certificate became null and void." It is also the contention of the defendant that the plaintiff also failed to pay his August installment or assessment for the year 1933, but contends that the plaintiff did, on the 11th day of September, 1933, tender to the defendant a United States post office money order in the sum of $5.54 in payment of assessments for the months of July and August, but that he did not tender his installment or assessment for the current month of September, 1933, along with July and August, as the defendant required, and as was required, according to defendant's contention, by the constitution and by-laws, and the defendant further contends that in view of the fact that it had notice that the plaintiff had tuberculosis the defendant refused to accept the said sum of $5.54, and, therefore, the defendant returned the said sum to the plaintiff. In connection with this letter addressed to the plaintiff the defendant required that the plaintiff undergo a medical examination and furnish to the defendant a physician's certificate, and also required that the plaintiff furnish a questionnaire on the subject of tuberculosis. According to the defendant's contention, the plain-

tiff failed and refused to comply with this request. It is the further contention of the defendant that no further installments or assessments were paid or offered to be paid by the plaintiff.

It is the clear contention of the defendant that the plaintiff forfeited all of his rights under the policy when he failed to pay his July and August assessments, referred to. In this connection the plaintiff contends, and offered testimony in support thereof, that when he was a member of the camp at Omaha, Neb., the defendant did not require him to pay these assessments promptly on time, but that the defendant received the payment of these assessments after they were due. It may be further stated in this connection that the plaintiff testified that he was lulled into security by the defendant's former dealings with him, and that he believed if he paid the assessments within a reasonable time after the same became due that the payment would be accepted and that his certificate would be kept in force. In view of the testimony offered on the question of waiver, the trial Judge submitted that question to the jury.

With reference to Section 65, referred to above, and in connection therewith we quoted certain testimony, it is the contention of the plaintiff that he was not required thereunder to undergo a medical examination. The plaintiff claims, however, that the defendant did make such requirement and that this act on the part of the defendant constituted a fraudulent intent to deprive the plaintiff of his rights under the said certificate of insurance but, knowing that he could not be legally enforced to undergo this medical examination by a physician furnished by the defendant, the plaintiff did not submit to such examination, and did not furnish the certificate the defendant sought to obtain. In this connection it may be stated that the plaintiff contends, and furnished testimony to substantiate the fact, that he did not have tuberculosis. While the plaintiff admits that at the time he asked for blanks he was unwell and for that reason ob-

tained some treatment, he denies that he had tuberculosis, or ever had that disease, and he further testified, in effect, that he was as well as any man could expect to be at his age; that he did much manual labor and was able at the time the defendant canceled his certificate of insurance, as well as at the time of the trial of this case, to perform regular manual labor and do the regular work that has to be done on a farm and in other places where he was accustomed to work to obtain a living. In this connection it may be stated that plaintiff testified, in effect, that he had a family and he had to support them, and for this reason he performed regular manual labor.

As to the first question, presented by the appellant in the list of questions involved for the Court's consideration, "Did the Court err in refusing defendant's motion to strike from the complaint the allegations therein as to punitive damages?" we deem it sufficient to state that the allegations in this case regarding punitive damages could not be stricken wthout receiving and considering the testimony bearing on the question. Therefore, it was proper for the motion to be refused and for testimony to be received.

As to the second question presented by the appellant for the Court's consideration, "Did the trial Judge err in refusing defendant's motion for a directed verdict?" it is our opinion that the Court erred in so far as punitive damages are concerned, and that his Honor, the trial Judge, should have directed a verdict for the defendant as to punitive damages, there being, in our opinion, no testimony tending to show that a fraudulent act on the part of the defendant accompanied the breach, though there was testimony tending to show a breach of contract. The trial Judge, therefore, properly refused to direct a verdict for the defendant as to actual damages, and properly submitted that question to the jury. In this connection we call attention to the case of *Pack v. Metropolitan Life Insurance Company*,

178 S. C., 272, 278, 182 S. E., 747, and authorities therein cited.

As to the third question presented to the Court by appellant for the Court's consideration, "Did the trial Judge err in admitting in evidence, over defendant's objection, plaintiff's Exhibit No. 9?" (Intended for No. 10), we desire to call attention to the fact that certain parts of the exhibit were ordered stricken out by the trial Judge, and only certain parts allowed to be introduced in evidence. In our opinion, the portion which the trial Judge admitted in evidence was not prejudicial to the rights of the appellant.

The fourth question presented by the appellant for the Court's consideration was as follows: "Did the trial Judge err in construing Section 65 of the constitution and by-laws of defendant, and in his charge to the jury with reference thereto? (Exception 4.)"

Section 65 of the constitution and by-laws referred to under this question reads as follows: "Sec. 65. Any member who becomes suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person

was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments, in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever."

After reading to the jury the above section, No. 65, referred to, and explaining to the jury that the questions in dispute involved in this section were matters for the jury to pass upon, his Honor gave the following instructions:

"Mr. Garvin says nowhere is there mentioned any requirement that he shall undergo a medical examination before he can be re-instated if his certificate has been suspended, and that is true. Nowhere in Section sixty-five (65) does it state that he has to undergo a medical examination, and he claims in his complaint that that was required, and he claims that it was done with a fraudulent intent to deprive him of his certificate and the benefits thereunder.

"Now, I want you Gentlemen to pay attention to the reading of this Section sixty-five (65), because as I say, it is important in this case. But, before I go into that, I will say this, Mr. Foreman and Gentlemen, it is for you to say whether or not the Company had dealt with Mr. Garvin before this time in such a manner as to lead him to believe, and whether or not he did believe that he would not be required to pay strictly within the time limited by this section on this certificate or assessment, and that if it was paid within a reasonable time thereafter it would be accepted and received and his certificate kept good. As I say, that is a matter which you will have to pass on if you find that to be the case, and that their course of dealing with him warranted him in believing that they would not hold him up to the strict requirement, and that if he paid the assessment within a reasonable time his certificate would be kept good, then it is too late for those in charge of the affairs of the Company at the head office to come in and say on this occasion we will hold you

up to it and that your policy is suspended. The head office of the company has a right to waive it—not any subordinate Lodge would have that right, but the head office would—and if you find the facts which I have just stated Mr. Garvin claims are true, then they would be estopped from claiming that his policy was suspended. But suppose Mr. Garvin has not satisfied you that they had waived the suspension, then we come next to the provisions of Section sixty-five (65) to see whether or not that the certificate was good at the time that they required this examination, and with that in view I am going to read to you the provisions of Section sixty-five (65)—and I say again it is important in this case, because not only Mr. Garvin is bound by it—no question about that —and in an equal way is the Woodmen of the World bound by section sixty-five (65), and nowhere in this section is there any mention about any requirement of being examined by a physician, but there is one requirement and that is of course important. It is important to Mr. Garvin and important to the Company, and that is when he undertakes to re-instate under Section sixty-five he must be in good health."

(Here the trial Judge read Section 65.)

"That would mean in this case he would have to pay up for July and August, and he would also have to pay for September, but as to the month of September, Gentlemen, that month at the time that this demand was made that he undergo an examination by a physician had not passed out. It was still open."

We find no error in this charge, and certainly no prejudicial error.

Of course, the question of waiver, as stated above, was a matter for the jury to pass upon.

Under Nos. 5 and 6, the following questions are presented by the appellant:

"5. Did the trial Judge err in his refusal to charge defendant's second request to charge, and in his comments with reference thereto?

"6. Did the trial Judge err in refusing to charge defendant's request to charge upon the law of estoppel?"

.We find no error as contended by the appellant.

The last question presented by the appellant is the following: "7. Did the trial Judge err in refusing defendant's motion to set the verdict aside and grant a new trial?"

A study of this question convinces us that the error charged must be overruled.

It is, therefore, the judgment of this Court that the judgment as to actual damages be and the same is hereby sustained, but the judgment as to punitive damages be and the same is hereby reversed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Baker concurs in result.